JOSEPH P. RUSSONIELLO (CASBN 44332)
United States Attorney

BRIAN J. STRETCH (CASBN 163973)
Chief, Criminal Division

JEFFREY R. FINIGAN (CASBN 168285)
Assistant United States Attorney

450 Golden Gate Avenue
San Francisco, California  94102
Telephone: (415) 436-7232
Facsimile: (415) 436-7234
Email: jeffrey.finigan@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal No. CR 07-0324 MMC |
| ) | |
| Plaintiff, ) | |
| ) | UNITED STATES' SENTENCING |
| ) | MEMORANDUM & REQUEST FOR |
| v. ) | EVIDENTIARY HEARING |
| ) | |
| GRAHAM PAUL VANE, ) | Date: April 16, 2008 |
| ) | Time: 2:30 p.m. |
| Defendant. ) | Court: Hon. Maxine M. Chesney |
| ) | |

U.S. Sentencing Memo
CR 07-0324 MMC

**TABLE OF CONTENTS**

I.  Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. Guideline Calculation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.   Proposed Sentence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
     A.     Prison. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
          1.     A 30-month Prison Sentence is Called for by the Guidelines and is
               Reasonable Pursuant to 18 U.S.C. § 3553.. . . . . . . . . . . . . . . . . . . . . . 7
          2.     Probation's Recommended Prison Sentence is Unreasonable.. . . . . . . . . . 8
     B.     Restitution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     C.     Fine. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV.   Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*United States v. Nash*, 115 F.3d 1431 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## FEDERAL STATUTE, RULES, AND GUIDELINES

18 U.S.C. § 1001. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3553(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 8, 10

18 U.S.C. § 3572(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18 U.S.C. § 3572(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

18 U.S.C. § 3624. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 3664(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

29 U.S.C. § 510(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Crim. P. 32. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

U.S.S.G. § 3E1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## LOCAL RULES

N.D. Cal. Civ. R. 32-5(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

JOSEPH P. RUSSONIELLO (CASBN 44332)
United States Attorney

BRIAN J. STRETCH (CASBN 163973)
Chief, Criminal Division

JEFFREY R. FINIGAN (CASBN 168285)
Assistant United States Attorney

  450 Golden Gate Avenue
  San Francisco, California 94102
  Telephone: (415) 436-7232
  Facsimile: (415) 436-7234
  Email: jeffrey.finigan@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     Plaintiff, <br>     v. <br> GRAHAM PAUL VANE, <br>     Defendant. | Criminal No. CR 07-0324 MMC <br><br> UNITED STATES' SENTENCING MEMORANDUM & REQUEST FOR EVIDENTIARY HEARING <br><br> Date: April 16, 2008 <br> Time: 2:30 p.m. <br> Court: Hon. Maxine M. Chesney |

**I.    Introduction**

       The defendant pled guilty to counts one through five of the captioned indictment charging him with embezzlement (count 1), in violation of 29 U.S.C. § 510(c), and false statements (counts 2 through 5), in violation of 18 U.S.C. § 1001. There was no plea agreement. In the presentence investigation report (PSR), the Probation Department ("Probation") calculates the defendant's Guidelines as a total offense level of 16, criminal history category I, with a corresponding sentencing range of 21-27. Although Probation finds no factors warranting a

U.S. Sentencing Memo
CR 07-0324 MMC

downward departure, they recommend a prison sentence of 15 months and justify that recommendation by relying upon additional factors to be considered pursuant to 18 U.S.C. § 3553(a). PSR at 23. The government disagrees with Probation's Guideline calculation and sentence recommendation and, for the reasons set forth herein, respectfully requests that the Court impose the following sentence:

- 30 months in prison (based on an applicable Guideline range of 27 – 33) on each count with the sentences to run concurrently
- 3 years of supervised release on each count with the sentences to run concurrently and with the conditions set forth in the PSR (unless otherwise specified in this memorandum)
- Restitution of $178,910.82 payable immediately or within sixty (60) days of sentencing (not according to any monthly payment plan) to the National Association of Letter Carriers, AFL-CIO, Branch 1280, 306 7th Ave., San Mateo, California, 94401
- $25,000 fine on count 1 payable immediately (not according to any monthly payment plan)
- $500 mandatory special assessment payable immediately (not according to any monthly payment plan)

### II.     Facts

The conduct underlying the charges in the indictment came to light during a random audit of the National Association of Letter Carriers, AFL-CIO, Branch 1280 (NALC Branch 1280) by the U.S. Department of Labor, Office of Labor Management Standards. NALC Branch 1280 is comprised of approximately 500 members, almost all of whom are U.S. Postal Service letter carriers. The defendant was the President of NALC Branch 1280 for approximately 10 years, including the time period set forth in the indictment. NALC Branch 1280 was required to annually file a Form LM-3 Labor Organization Annual Report ("Form LM-3") with the U.S. Department of Labor. The Form LM-3 included information related to all of NALC Branch 1280's monetary disbursements for each calendar year.

The main source of income for NALC Branch 1280 is member dues. Dues are deducted from members' paychecks and sent to the NALC headquarters and then the NALC mails the individual branch portion of the dues to Branch 1280. NALC Branch 1280 then deposits the check into its checking account. Checks drawn on the account require two signatures and there were three authorized signatories during the relevant time period: President (the defendant), Executive Vice-president (Charles Pearson), and Financial Secretary-Treasurer (Ronald Bambao and his successor Ludwig Mosteiro). All of the checks written on the account that were reviewed as part of the investigation were co-signed by the defendant and Bambao or Mosteiro. There is no evidence that Bamboa or Mosteiro were involved in the defendant's scheme.

While he was President, the defendant controlled every aspect of the branch's finances. He approved and authorized disbursements, reconciled the bank account, entered figures and amounts in the computerized bookkeeping system, categorized the disbursements, and provided the financial data used in the LM-3 reports. Most importantly, according to the current financial secretary-treasurer, Mosteiro, the defendant was the only person who reviewed the credit card statements. One of the required records NALC Branch 1280 keeps is a computer generated check register called the Itemized Categories Report (ICR). The ICR is used by the branch's accountant to assist the organization in preparing the Form LM-3 report. The defendant made hundreds of false entries in the ICRs for 2002-2005.

By virtue of exercising this level of control over the branch's finances, the defendant was able to embezzle money on a monthly basis. One of the ways he embezzled money was by writing checks on the branch's account to pay for his own personal expenses, such as personal credit card bills and his wife's cell phone bills. For example, on February 22, 2003, the defendant wrote a $600 check (#5431) on the account to pay for his own personal American Express card bill. The defendant thereafter falsely accounted for check #5431 in the 2003 ICR by splitting the $600 into two charges under the categories of "office expenses" ($359) and "software" ($241). Another way he embezzled money was by using his branch-issued American Express card for personal expenses and then paying those bills from the branch account without reimbursing the organization. For example, in August 2002, the defendant took a personal trip to

Las Vegas with family members. He used his branch American Express card to charge $406.85 at the Imperial Palace Hotel for spa services, movie rentals, and other personal expenses. He subsequently paid for those charges with check #5292 from the branch account and then categorized check #5292 in the 2003 ICR as having been for "convention expenses."

As part of his audit/investigation, Investigator Michael Ng of the Department of Labor meticulously went through every available statement in connection with eleven (11) different credit cards, including the defendant's branch-issued credit card and numerous personal credit cards. The PSR details these findings in paragraphs 14-25. The loss amount to the victim during the time period covered by the audit was at least $178,910.82. PSR ¶31. The types of personal expenses the defendant incurred and used branch money to pay for included restaurants, groceries, massages, gas, jewelry, wine, and airfare for himself and his family members.

As President, the defendant signed and attested to the accuracy of the branch's Form LM-3 for the years 2000 – 2005. One of the line items he signed was as follows: Item #15: "During the reporting period did the labor organization discover any loss or shortage of funds or assets? (Answer "Yes" even if there has been repayment or recovery.)." From January 2002 and continuing on an approximately regular monthly basis through March 2006, the defendant made false entries in the branch's financial records and in the Form LM-3s in order to conceal his embezzlement scheme. Specifically, on March 27, 2003, March 30, 2004, March 31, 2005, and March 29, 2006, he signed and attested to the accuracy of Form LM-3s for the branch. On each of the aforementioned Form LM-3s he stated that he did not discover any loss or shortage of funds or other property for 2002, 2003, 2004, and 2005, respectively, when in fact he knew the branch experienced a loss of funds by virtue of his embezzlement.

### III.  Guideline Calculation

The government agrees with the PSR Guideline calculation with the exception that it opposes any reduction in the offense level on the basis that the defendant has fully accepted responsibility. PSR ¶48. Accordingly, the total offense level should be 18 instead of 16 and the range of imprisonment should be 27-33 instead of 21-27. The main basis for the government's objection here is that the defendant relies upon frivolous excuses in refusing to accept

responsibility for the full loss amount.

Guideline §3E1.1 specifically notes that "a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." USSG §3E1.1, Application Note 1(a). In this context, "a defendant who enters a guilty plea is not entitled to an adjustment under §3E1.1 as a matter of right." *Id.*, Application Note 3. Probation's analysis in the PSR does not justify the 2-level decrease. All the defendant has done so far is plead guilty and admit part, *i.e.* $98,000, of the restitution. The guilty pleas are certainly relevant, but not determinative when a defendant has no defense to a case and no option but to plead guilty. In that situation the Court must look to other factors – none of which are in the defendant's favor here.

First, the defendant has set forth frivolous objections to the loss amount. Specifically, the defendant disputes the inclusion of a significant amount of restaurant charges in the total loss amount. He claims that all weekday meals should be excluded as "business-related." However, when asked for any evidence in support of that claim, the defendant has declined to produce a single name of someone he allegedly had a business meal with. Inspector Ng interviewed Manuel Mairena (NALC Branch 1280's Acting President), and Lilibeth Beaumont (NALC Branch 214 President) in October 2007. Mr. Mairena advised Inspector Ng that he has not had any business-related meals since taking over as President in July 2007 and he estimated that in a one year period there may only be 2-3 occasions where such a meal might occur. Mr. Mairena further stated that such lunches would require approval from the executive board. The government is unaware of any evidence of NALC Branch 1280's board ever approving a business lunch for the defendant. Likewise, Ms. Beaumont advised Inspector Ng that she has never had a union-paid meal with anyone during her tenure as President of a neighboring NALC branch. Inspector Ng also interviewed Charles Pearson. Mr. Pearson was the President of the Burlingame NALC branch before it merged with Branch 1280. He retired from the Post Office in 1992 but remained involved with NALC Branch 1280 and was its executive Vice President from 2002 through 2006. Mr. Pearson advised Inspector Ng that he had work lunches with the defendant about 2-3 times per month, but never in San Francisco or the wine country (where a

significant amount of the defendant's fraudulent charges occurred), and that Pearson paid the bill half of the time with his personal funds. Pearson did not know whether the defendant used union funds when he paid the bill, but that if he did it would have been unfair to do so. The defendant similarly objects to the inclusion of gas charges in the loss amount on the basis that they were business-related. Again, Inspector Ng gave the defendant the benefit of the doubt and did not include any "mileage" expenses in the loss amount. The defendant wrote union checks to himself (and his daughter April Torres) from 2002 through 2005 totaling almost $5,000 for "mileage." Mileage includes gas and those checks were not included in the loss amount. Any more specific "gas" charges are over and above what the defendant has already been reimbursed for. They are properly included in the loss amount.[1]

Second, the defendant initially appeared on the indictment on May 31, 2007. Despite having no defense to the charges, he did not enter his guilty pleas until more than seven months later on January 9, 2008.

Third, although the defendant expressly admitted to stealing at least $100,000 at the time of his guilty plea[2], he has reneged on that promise in light of his civil settlement with the victim for $98,000. Now, regardless of the true amount of money he stole, the defendant wants his liability (for both sentencing and restitution purposes) to be limited by his civil settlement with the victim. This does not constitute taking responsibility. Indeed, this is prohibited as a matter of law. 18 U.S.C. § 3664(f)(1)(B) ("In no case shall the fact that a victim has received or is entitled tor receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution.").

Fourth, despite being caught red-handed well over a year ago stealing from his co-workers, the defendant has yet to pay the victim any restitution. Even if the defendant disputes

---

[1] Pursuant to Criminal Local Rule 32-5(d) and Federal Rule of Criminal Procedure 32, these are the factual issues to be resolved at an evidentiary hearing. Unless the defendant is willing to stipulate that Mr. Mairena, Ms. Beaumont, Mr. Pearson, and Inspector Ng would so testify, the government intends to call them as witnesses. As of the submission of this memorandum, the government was in the process of determining whether the witnesses are available on April 16, 2008. Alternatively, pursuant to Rule 32(i)(3)(B), it is within the Court's discretion to determine that a hearing is unnecessary because these issues will not affect sentencing or will not be considered by the Court.

[2] Application For Permission to Enter Plea Of Guilty And Order Accepting Plea at 5.

U.S. Sentencing Memo
CR 07-0324 MMC                                6

the loss amount in excess of $98,000, there is no justification for having failed to pay at least $98,000 back to the victim by now. This refusal to return the victim's money until a Court orders him to do so at sentencing should weigh heavily in favor of striking the 2-level reduction for acceptance of responsibility.

Probation relies upon irrelevant and incomplete information in recommending the 2-level adjustment. PSR, Addendum to the Presentence Report at ¶2. Specifically, the defendant's remorse in the presentence interview is irrelevant. The defendant is only sorry he was caught and if the random audit had not occurred his scheme would not have ended. Remorse is not an enumerated factor to be considered in Guideline §3E1.1 either. The defendant's resignation from NALC Branch 1280 is also irrelevant because he only did so at the urging of the NALC (pursuant to Mr. Mairena) after media articles about his indictment and at a point where he already had approximately 30 years of service and was about to retire anyway. He failed to resign during the audit when it was clear his fraud was being discovered. These two irrelevant factors, along with the guilty pleas, cannot constitute complete acceptance of responsibility in light of the contrary factors set forth herein. Thus, it is fair and reasonable to strike the 2-level decrease for acceptance of responsibility from the PSR and the total offense level should be 18.

## IV.     Proposed Sentence

### A.     Prison

#### 1.     A 30-month Prison Sentence is Called for by the Guidelines and is Reasonable Pursuant to 18 U.S.C. § 3553.

Assuming the defendant's applicable Guideline range of imprisonment is 27-33 months, he deserves a sentence squarely in the middle of that range. As the PSR points out, there are no bases for departures pursuant to the Guidelines. The defendant schemed to steal from co-workers who trusted him, and his criminal conduct was sophisticated and spanned at least five years. There was a significant financial loss of $178,910 to the victim and despite having assets worth more than $1,000,000, the defendant has yet to pay back a cent of what he stole. The defendant was also no Robin Hood – he stole from the victim so he could dine at fine restaurants on a regular basis, buy nice wines, pay his wife's cell phone bill, and take his family members on a

trip to Las Vegas. The defendant also stole this money from the victim even though he had a significant income and assets worth more than $1,000,000. There are no mitigating factors warranting a sentence at the low-end of the Guidelines, much less something below the applicable range. Probation's use of family tragedies that pre-date the charged criminal conduct as mitigation should be rejected – even the defendant admits "those are just excuses." PSR ¶34.

Applying the factors in 18 U.S.C. § 3553(a) to this case leads to the conclusion that a 30-month sentence is reasonable:

- the nature and circumstances of the offense are that it was an extremely serious abuse of power and position of trust in order to steal a significant amount of money from co-workers just to finance an expensive lifestyle; the history and characteristics of the defendant are that he has no countable criminal history points, but he has numerous old arrests and convictions;
- a mid-range sentence of 30 months will reflect the seriousness of the offense, promote respect for the law, and provide just punishment;
- the proposed sentence will deter future criminal conduct by the defendant and others; and
- to the extent the defendant expresses a need for drug and/or alcohol counseling, the BOP offers intense programs in those areas.

**2.    Probation's Recommended Prison Sentence is Unreasonable.**

Probation recommends a 15-month sentence, which is 6 months below the low-end of the applicable Guideline range as calculated by Probation. Probation concedes that there are no bases for departing downward under the Guidelines. PSR ¶107. Nevertheless, Probation supports its recommendation by relying on 18 U.S.C. § 3553(a) and pointing to the defendant's unrelated family tragedies that predated the criminal conduct by several years. PSR, Sentencing Recommendation at p. 2. Those events are irrelevant. Alternatively, to the extent the Court finds any relevance pursuant to the "history and characteristics of the defendant" prong of §3553(a)(1), the value of that information is far outweighed by the remaining evidence in the case.

In making its recommendation, Probation first notes that the defendant's mother was

murdered when the defendant was 17.  As terrible as that is, there is no logical correlation between that event and the charged conduct at least 30 years later.  Next, Probation points out that the defendant's wife died unexpectedly in 1993.  Again, a tragic event, but one that preceded the charged conduct by at least nine years.  In 1994 – eight years before the charged conduct – his son was sent to residential drug treatment.  In 1996 – six years before the charged conduct – one son was killed in an auto accident and the other son killed someone and was convicted of vehicular manslaughter.  Putting aside the time that passed between these events and the charged conduct, they can not substantively mitigate the criminal conduct either.  He didn't steal to help any of his family members or to pay for his own counseling in connection with the listed events.  He didn't steal to support a drug habit brought on by the tragic events because he had plenty of money and a good job with a steady income already.  The defendant stole from his co-workers so he could support an occasionally lavish lifestyle and because he thought he could get away with running many of his personal bills through the union – this motive for the defendant's criminal conduct simply cannot be a mitigated.  Probation's final justification for a 15-month sentence is that the defendant's daughter contacted him in 1996, apparently after having no contact with him for 25 years.  On its face, that appears to be a <u>positive</u> event and it is difficult to understand how that could have contributed to the defendant's decision to steal from his co-workers or how it could possibly justify a lesser sentence if it did somehow contribute to that conduct.

With credits pursuant to 18 U.S.C. § 3624, a 15-month sentence would result in the defendant serving a little more than one year in prison for an extremely significant crime.  In light of the facts and circumstances of the offense and the absence of mitigating factors, that sentence is unjust and unreasonable.

**B.     Restitution**

The government agrees with the loss calculation of $178,910.82 in the PSR.  With respect to the timing of payment of the restitution, it should be ordered paid immediately in a lump sum payment.  18 U.S.C. §§ 3572(d) and 3664(f)(2) and (3).  Section 3664 states that the Court shall "pursuant to section 3572, specify in the restitution order the manner in which, and schedule according to which, the restitution is to be paid."  Section 3572 then mandates that restitution

shall be paid immediately or in installments if the interests of justice so require, but that in the latter case, the schedule of payments "shall be the shortest time in which full payment can reasonably be made." There are no "interests of justice" in allowing the defendant to keep any of the victim's money. Further, given the defendant's net worth of more than $1,000,000, the shortest time in which full payment can reasonably be made is immediately. The defendant is also retired with retirement benefits and Social Security, and is employable and capable of generating additional income (following his release from the BOP). This issue could not be simpler: you steal money, you pay it back. Accordingly, the defendant must be ordered to pay the full restitution amount immediately upon sentencing or within a reasonable amount of time to allow him to liquidate or refinance his real estate holding(s).

Probation's recommendation is somewhat vague in that it recommends restitution "shall be due immediately," but then proposes a payment plan of $500/month upon release from prison. Such a payment plan is unreasonable and unfair. At $500 per month, it will be nearly 30 years – if he lives to be 92 – before the defendant pays the victim back. During that time, the defendant will essentially benefit from a 30+ year, no-interest loan from the victim for almost $200,000. Any complaint that immediate restitution causes some kind of hardship on the defendant should be summarily rejected. The defendant has the burden of showing an <u>inability</u> to pay, *i.e.* inconvenience or expense to the defendant is irrelevant. *United States v. Nash*, 115 F.3d 1431, 1442 (9th Cir. 1997). The defendant has no right to keep a cent of the victim's money any longer than he already has.

C.   **Fine**

A $25,000 fine is just and reasonable for several reasons. First, the punishment of a fine is appropriate pursuant to the factors set forth in 18 U.S.C. § 3553(a) as described above in §IV.A. Second, the defendant possesses significant assets and retirement benefits. Third, the fine will not burden the defendant, because it represents less than 2.5% of the more than $1,000,000 in assets he will still possess after paying the restitution.[3] Fourth, the pecuniary loss

---

[3] Probation's recommended fine of $10,000 represents less than 1% of the defendant's net worth, which hardly seems punitive in light of the seriousness and scope of the defendant's scheme.

he inflicted upon the victim was much more severe than the proposed fine. Fifth, since the defendant has benefitted from an interest-free loan from the victim and he cannot be ordered to pay interest as part of the restitution order, there is a need to deprive the defendant of this illegally obtained gain from his crime. The defendant also illegally benefitted by remaining employed and collecting salary, benefits, and credit towards retirement for at least five years more than he should have. Had his theft been discovered in 2002 he would have undoubtedly been fired. Thus, these significant benefits constitute additional illegally obtained gains he should be at least partially deprived of. Sixth, the government will incur significant costs in imprisoning the defendant, and he should compensate the taxpayers to some extent for those costs. 18 U.S.C. § 3572(a).

Although the restitution is substantial, it is worth noting that restitution <u>is not punishment</u>. Restitution is simply giving back what the defendant had no right to take in the first place. The defendant could pay the restitution immediately and still have over $1,000,000 in assets. Thus, the amount of restitution plays no role in whether a fine is levied.

With respect to the timing of the payment of the fine, it should be ordered paid immediately because there are no interests of justice in ordering otherwise and "immediately" represents the shortest time within which the payment can reasonably be made. 18 U.S.C. § 3572(d).

IV. **Conclusion**

For the reasons set forth herein, the government respectfully requests that the Court impose sentence as follows:

- 30 months in prison (based on an applicable Guideline range of 27 – 33) on each count with the sentences to run concurrently;
- 3 years of supervised release on each count with the sentences to run concurrently and with the conditions set forth in the PSR (unless otherwise specified in this memorandum);
- Restitution of $178,910.82 payable immediately, e.g. on or before April 23, 2008, or within sixty (60) days of sentencing (not according to any monthly payment

plan) to the National Association of Letter Carriers, AFL-CIO, Branch 1280, 306 7th Ave., San Mateo, California, 94401;

- $25,000 fine on count 1 payable immediately, e.g. on or before April 23, 2008 (not according to any monthly payment plan); and
- $500 mandatory special assessment payable immediately, e.g. on or before April 23, 2008 (not according to any monthly payment plan).

DATED: April 9, 2008         Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

_____/s/_____
JEFFREY R. FINIGAN
Assistant United States Attorney

U.S. Sentencing Memo
CR 07-0324 MMC                    12